1
2
3
4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7    AARON L. BELL,

8                          Plaintiff,          NO. 2:20-CV-0051-TOR

9          v.                                  ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'
10   J. CHRISTENSEN, D. DUNKIN, J.             MOTION FOR SUMMARY
     CURTIS, E. KANNBERG, and THE              JUDGMENT
11   CITY OF SPOKANE,

12                          Defendants.

13

14         BEFORE THE COURT is Defendants' Motion for Summary Judgment

15   (ECF No. 24).  This matter was submitted for consideration without oral argument.

16   The Court has reviewed the record and files herein, and is fully informed.  For the

17   reasons discussed below, Defendants' Motion for Summary Judgment (ECF No.

18   24) is **GRANTED in part** and **DENIED in part**.

19

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 1

**BACKGROUND**

This case arises from an arrest made by the Spokane Police Department ("SPD") in Spokane, Washington.  ECF No. 21.  Defendants seek summary judgment on Plaintiff's causes of action as outlined below.  ECF No. 24.  Defendants do not address the allegations against the Spokane County Jail, a separate legal entity.  ECF No. 24 at 6.  Except where noted, the following facts are not in dispute.

On August 23, 2019, SPD officers responded to a fight at the Zola Bar and Restaurant ("Zola") in downtown Spokane.  ECF No. 25 at 1-2, ¶ 1-2.  Witnesses described the events leading up to the altercation and arrest.  ECF No. 25 at 3, ¶ 5.  According to the reports, Zola patrons complained to staff that "Plaintiff was intoxicated and bothering other patrons."  *Id.*  One bar employee asked Plaintiff to leave and moved his drink away.  *Id.*  Plaintiff then "sucker punched" the bar employee twice in the head.  *Id.*  Another employee then threw Plaintiff into a service cart and onto the ground, where he was restrained until SPD officers were summoned.  ECF No. 25 at 3, ¶ 6.  Plaintiff disputes this general version of events, specifically contesting that he "sucker punched" anyone and that any such statements are otherwise inadmissible hearsay.  ECF No. 38 at 2, ¶¶ 2-3.

At approximately 10:50 p.m., SPD officers Sergeant Terry Preuninger, Detective Jason Curtis, Officer David Dunkin, and Officer James Christensen

responded to the altercation.  ECF No. 25 at 1-2, ¶ 1-2.  All named officers were wearing body cameras.  ECF No. 25 at 2, ¶ 3; ECF No. 41.  Upon arriving at Zola, the officers found Plaintiff on the ground restrained by bar employees and patrons.  ECF No. 25 at 3, ¶ 4.  The officers placed Plaintiff under arrest.  ECF No. 25 at 4, ¶ 7.  While the officers waited for a police vehicle to arrive, they observed Plaintiff in a "highly intoxicated" state.  ECF No. 25 at 4, ¶ 8.  Plaintiff disputes the officers' observations, stating that "Plaintiff was not 'highly intoxicated,' nor did he appear so."  ECF No. 38 at 2, ¶ 4.  *But see* ECF No. 31 at 22 (Plaintiff's admission that he consumed "1 bottle of wine tonight.").  When the police vehicle arrived, the officers took Plaintiff outside and directed him to the back seat.  ECF No. 25 at 4, ¶ 9.  Around this time, Sergeant Kannberg arrived on scene.  ECF. No. 25 at 4, ¶ 10.

The parties generally dispute the events relating to Plaintiff's ability and manner of entering the police vehicle.  Defendants claim Plaintiff refused to enter the vehicle with his back first, but Plaintiff disputes that he refused or resisted.  ECF No. 25 at 5, ¶¶ 11-12; ECF No. 38 at 4, ¶¶ 8-9.  Plaintiff complained that his handcuffs were too tight, so Detective Curtis loosened them.  ECF No. 25 at 5, ¶ 11; ECF No. 38 at 2-3, ¶ 5.  While Defendants state that they could not remove the handcuffs pursuant to SPD policy and safety considerations, Plaintiff maintains

that such policy is in violation of RCW 70.48.500[1] and Defendants could have used alternatives.  ECF No. 25 at 5, ¶ 12; ECF No. 38 at 2-3, ¶¶ 5-6.

As a crowd and traffic started to form, Officer Christensen entered the opposite rear side passenger door and pulled Plaintiff backwards into the vehicle. ECF No. 25 at 5-6, ¶¶ 14-15.  Defendants maintain Officer Christensen grabbed both Plaintiff's arms above the elbow, but Plaintiff claims he "had one hand on the vehicle and one hand on Plaintiff's handcuffs, [and] pulled Plaintiff's restrained arms with such force that it caused Plaintiff's bone to break."  ECF No. 25 at 5-6, ¶¶ 14-15; ECF No. 38 at 4, ¶ 10.  Once Officer Christensen pulled Plaintiff into the vehicle, Plaintiff claimed that his shoulder was dislocated.  ECF No. 25 at 6, ¶ 16. Officer Dunkin reported that Plaintiff "immediately began screaming" but "continued to flail about the back of the car and tried to kick out my rear window." ECF No. 25 at 6-7, ¶ 17.  Officer Christensen also reported that Plaintiff "started to yell and scream that [Christensen] dislocated his shoulder." *Id.*  Plaintiff disputes that he tried to kick out the window, but rather he tried to move in order to alleviate his pain.  ECF No. 38 at 4-5, ¶ 11.

---

[1]    RCW 70.48.500 applies to restraints used on pregnant women and youth in custody.  As Plaintiff is neither, this statute is irrelevant.

1    After checking on him, Det. Curtis and Officer Christensen closed the rear

2    passenger door; the parties dispute whether the officers intentionally hit Plaintiff in

3    the head with the door.  ECF No. 25 at 7, ¶ 18; ECF No. 38 at 12.  Officer Dunkin

4    and Detective Curtis then transported Plaintiff to the Spokane County Jail.  ECF

5    No. 25 at 8, ¶ 21.  Defendants believed Plaintiff to be intoxicated rather than

6    injured but Plaintiff claims that "any marginally competent lay person" would

7    know "there was a high probability Plaintiff was badly injured."  ECF No. 25 at 7,

8    ¶ 19; ECF No. 38 at 5, ¶ 13.  The officers were aware that the Spokane County Jail

9    had medical staff who could evaluate and treat Plaintiff.  ECF No. 25 at 8, ¶ 21.

10    At the Spokane County Jail, Plaintiff was incarcerated under the "booking

11    exception" based on the officers' observations of Plaintiff.  ECF No. 25 at 8, ¶ 22.

12    A "booking exception" is made for individuals who commit a misdemeanor

13    offense that is based on threats to the public and the likelihood of continued

14    criminal behavior.  *Id.*  Plaintiff was cleared for intake by Spokane County

15    personnel.  ECF No. 25 at 8, ¶ 23.  Records indicate that the staff initially were

16    unable to complete medical booking because Plaintiff "came in highly intoxicated

17    … uncooperative and belligerent."  ECF No. 25 at 9, ¶ 24.

18    At approximately 4:00 a.m., Plaintiff was transported to Sacred Heart

19    Medical Center where he was later diagnosed with a broken clavicle.  ECF No. 25

20    at 9, ¶ 25.  Plaintiff told both his treating physician and radiologist, with varying

specificity, that his injury occurred when he was pulled out of a chair at Zola's and hit a doorjamb. *Id.* After receiving treatment, Plaintiff returned to the jail where he told staff that "he was assaulted at a bar last night and he lost consciousness." ECF No. 25 at 9, ¶ 26.

Plaintiff was ultimately charged with Fourth Degree Assault for punching the bar employee and entered a stipulated order for a continuance to commit no further criminal violations for approximately one year. ECF No. 25 at 9-10, ¶ 27.

## DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## B. Plaintiff's Federal Claims

### 1. Source of injury

Defendants ask this Court to find, by Plaintiff's own statements, that his broken clavicle was the result of being pulled out of a chair at Zola's, rather than being pulled into the police vehicle. ECF No. 24 at 4-5. Plaintiff maintains on summary judgment that Officer Christensen's handling of Plaintiff resulted in his injury. ECF No. 37 at 4. The body camera footage does not clearly depict how Officer Christensen pulled Plaintiff into the vehicle. ECF No. 41. Regardless of how Officer Christensen pulled Plaintiff into the vehicle, there is a genuine issue of

1  material fact as to how Plaintiff was injured.  Therefore, summary judgment on the

2  source of Plaintiff's injury is not appropriate.

3       *2.  Fourth Amendment: Excessive Force*

4       Defendants argue that Officer Christensen did not use excessive force when

5  pulling Plaintiff into the police vehicle and shutting the door on or near his head.

6  ECF No. 24 at 6-11; ECF No. 42 at 5.  Plaintiff counters that no force or less force

7  should have been used under the circumstances.  ECF No. 37 at 6-11.

8       The Fourth Amendment affords the right to be free from unreasonable

9  seizures.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  To effect an arrest, the

10  officer necessarily has "the right to use some degree of physical coercion or threat

11  thereof to effect it."  *Id.* at 396.  However, the officer may not exceed the "bounds

12  of reasonable force."  *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1116 (9th

13  Cir. 2017) (quoting *Graham*, 490 U.S. at 395-96).  The standard for reasonable

14  force is objective considering the facts and circumstances, and the Court may not

15  consider the "officer's subjective 'intent or motivation.'"  *Id*. at 1116 (quoting

16  *Graham*, 490 U.S. at 397).  As excessive force claims "nearly always requires a

17  jury to sift through disputed factual contentions, and to draw inferences

18  therefrom," summary judgment "should be granted sparingly."  *Glenn v.*

19  *Washington County*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Smith v. City of*

20  *Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (*en banc*)).

1    In order to determine whether the force was objectively reasonable, the

2   Court balances "the nature and quality of the intrusion on the individual's Fourth

3   Amendment interests against the countervailing governmental interests at stake."

4   *Graham*, 490 U.S. at 396.  Three non-exclusive factors to consider when balancing

5   these interests are: "(1) 'the severity of the crime at issue,' (2) 'whether the suspect

6   poses an immediate threat to the safety of the officers or others,' and (3) 'whether

7   [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'"

8   *Shafer*, 868 F.3d at 1116 (internal citation omitted).

9    Additionally, the Court must assess the reasonableness "from the perspective

10  of a reasonable officer on the scene, rather than with the 20/20 vision of

11  hindsight."  *Id.* (quoting *Graham*, 490 U.S. at 396).  "Because the test of

12  reasonableness under the Fourth Amendment is not capable of precise definition or

13  mechanical application," the reasonableness of a seizure must instead be assessed

14  by carefully considering the objective facts and circumstances that confronted the

15  arresting officers.  *Graham*, 490 U.S. at 396.  This perspective is necessary

16  because officers "are often forced to make split-second judgments – in

17  circumstances that are tense, uncertain, and rapidly evolving – about the amount of

18  force that is necessary in a particular situation."  *Id.* at 397.  In some cases, for

19  example, the availability of alternative methods of capturing or subduing a suspect

20  may be a factor to consider.  *Smith*, 394 F.3d at 701.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 9

1    As to Plaintiff's claim that Officer Christensen used excessive force in

2  hitting his head as he closed the door, the argument is unavailing.  While hitting

3  someone with a door violently may rise to excessive force, most incidents are

4  either accidental or minor so that they are insufficient to rise to the level of a

5  constitutional violation.  *See Sienze v. Kutz*, No. 1:17-CV-0736 AWI SAB, 2019

6  WL 95459, at *9 (E.D. Cal. Jan. 3, 2019) (collecting cases).  As the video footage

7  does not objectively show any violent or intentional conduct, summary judgment

8  on this claim is appropriate.  ECF No. 41.

9    As to Plaintiff's claim that Officer Christensen applied excessive force in

10 pulling him into the police vehicle, a Sixth Circuit decision provides analogous

11 circumstances to this case.  In *McColman v St. Clair Cty*, an officer arrested a

12 suspect who was driving while intoxicated.  479 F. App'x 1, 6 (6th Cir. 2012).  The

13 suspect, a double below-the-knee amputee, could not scoot backwards into the

14 police car without her hands.  *Id.* at 7.  The officer did not remove her handcuffs as

15 he had knowledge that "she was inclined toward dangerous behavior" when she

16 previously set fire in her husband's home.  *Id.*  While handcuffed, the officer

17 grabbed the suspect by her upper arms and pulled her inside the police vehicle.  *Id.*

18 The court held that it was reasonable for the officer to keep the handcuffs on the

19 suspect and apply "force sufficient, but not greater than necessary" to get the

20 suspect into the vehicle.  *Id.*  Thus, there was no Fourth Amendment violation

1    because there was no "gratuitous use of force" and the officer "did not use

2    excessive force in pulling [the suspect] across the back seat of the vehicle" even

3    when the force caused bruising. *Id.*; *see also Brothers v. Zoss*, 837 F.3d 513, 519

4    (5th Cir. 2016) (No excessive force where officers used force required to remove

5    suspect from vehicle when he refused to comply with instructions to get out of the

6    vehicle.).

7         Here, the severity of the crime at issue was serious as Plaintiff was suspected

8    of physically assaulting a bar employee. ECF No. 25 at 3, ¶ 5. Moreover, while

9    Plaintiff disputes his intoxication level, the officers had reason to suspect a threat

10   to safety as they found Plaintiff actively restrained by bar employees and patrons.

11   ECF No. 25 at 3, ¶ 6. While it does not appear that Plaintiff actively resisted arrest

12   or attempted to flee, he did not follow directions to enter the police vehicle

13   backwards, claiming that he could not enter in the manner the officers' requested.

14   ECF No. 41; ECF No. 25 at 5, ¶¶ 11-12, ECF No. 38 at 4, ¶¶ 8-9. The officers

15   even loosened the handcuffs to aid him. ECF No. 25 at 5, ¶ 11. However, the

16   parties dispute the way Officer Christensen pulled Plaintiff into the vehicle. *See*

17   ECF No. 25 at 5-6, ¶¶14-15; ECF No. 38 at 4, ¶ 10. Given that this incident was

18   not clearly video-recorded, there is a question of fact whether the officer used

19   greater force than necessary to pull Plaintiff into the vehicle, allegedly resulting in

20   a broken bone. While there is countervailing evidence that Plaintiff may have

1    suffered the broken bone earlier from his altercation with Zola employees and may

2    have admitted as much to medical personnel, viewed in the light most favorable to

3    Plaintiff, there is evidence with which the jury could reasonably find for Plaintiff.

4    As such, summary judgment on Plaintiff's excessive force claim is not appropriate.

5         3.   *Fourth Amendment: Failure to intervene*

6         Defendants argue that the other officers had no opportunity to intervene nor

7    did they "tacitly" collaborate to cause Plaintiff's injury.  ECF No. 24 at 11-12.

8    Plaintiff counters that the officers had multiple opportunities to intervene including

9    the opportunities to change Plaintiff's handcuffs, otherwise assist him into the

10   vehicle, or stop him from being transported directly to the jail.  ECF No. 37 at 11-

11   13.

12        Where an officer violates a suspect's Fourth Amendment rights, other

13   officers may also be liable under a theory of failure to intercede.  *Cunningham v.*

14   *Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (quoting *United States v. Koon*, 34

15   F.3d 1416, 1447 n.25 (9th Cir. 1994), *aff'd in part, rev'd in part*, 518 U.S. 81

16   (1996)).  However, "officers can be held liable for failing to intercede only if they

17   had an opportunity to intercede."  *Id.* (internal citations omitted).

18        Here, the Court found that there is a material question of fact as to whether

19   Officer Christensen used excessive force.  *See supra* at 11-12.  At the time he

20   pulled Plaintiff into the police vehicle, the other defendant officers were present at

1   the scene.  ECF No. 25 at 4, ¶ 10; ECF No. 41.  However, as the video footage

2   demonstrates, Officer Christensen pulled Plaintiff into the car within a matter of

3   seconds without notifying the other officers.  ECF No. 41.  Moreover, as the other

4   officers were on the other side of the vehicle, they were not in physical proximity

5   to intercede.  *Id.*  As such, summary judgment on Plaintiff's claim for failure to

6   intervene is appropriate.

7   　　　*4.   Eighth Amendment: Cruel and Unusual Punishment*

8   　　　Defendants argue that Plaintiff's Eighth Amendment rights were not violated

9   as a matter of law.  ECF No. 24 at 14.  Plaintiff did not address this claim in

10   response to the motion for summary judgment.

11   　　　The Eighth Amendment right to be free from cruel and unusual punishment

12   attaches after conviction and sentencing.  *Graham v. Connors*, 490 U.S. 386, 392

13   n.6 (1989); *Pierce v. Multnomah County*, 76 F.3d 1032, 1042 (9th Cir. 1996).  As

14   it is undisputed that Plaintiff's alleged injury occurred within the context of his

15   arrest, summary judgment on Plaintiff's Eighth Amendment claim is appropriate.

16   　　　*5.   Fourteenth Amendment: Adequate Medical Care*

17   　　　Defendants argue that they did not violate Plaintiff's due process rights

18   under the Fourteenth Amendment for (1) use of force and (2) transportation to the

19   jail rather than hospital.  ECF No. 24 at 14-15.  Plaintiff only tangentially responds

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 13

to the Fourteenth Amendment arguments by citing the standard for excessive force

in relation to the officers' failure to intervene.  ECF No. 37 at 13.

First, Plaintiff's excessive force claim is properly analyzed under the Fourth

rather than the Fourteenth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394

(1989).  Second, Plaintiff's adequate medical care claim is properly analyzed under

the Fourteenth Amendment.  *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25

(9th Cir. 2018), *cert. denied sub nom. Cty. of Orange, Cal. v. Gordon*, 139 S. Ct.

794 (2019).

Under the Fourteenth Amendment, the Due Process Clause protects a

pretrial detainee's right to adequate medical care.  *Gordon*, 888 F.3d at 1124-25.

On an objective deliberate indifference standard, a plaintiff must show: (1) "the

defendant made an intentional decision with respect to the conditions under which

the plaintiff was confined," (2) "those conditions put the plaintiff at substantial risk

of suffering serious harm," (3) "the defendant did not take reasonable available

measure to abate that risk, even though a reasonable official in the circumstances

would have appreciated the high degree of risk," and (4) "by not taking such

measures, the defendant caused the plaintiff's injuries."  *Id.* at 1125 (internal

citation omitted).  As a "mere lack of due care" is not sufficient to establish a

claim, "the plaintiff must 'prove more than negligence but less than subjective

intent – something akin to reckless disregard.'"  *Id.*

1    Here, Plaintiff fails to demonstrate that transportation to the jail rather than

2    the hospital "put [him] at substantial risk of suffering serious harm" or that it

3    caused the injury.  Taking Plaintiff's version that Officer Christensen broke his

4    clavicle as true, the injury nonetheless occurred prior to Plaintiff's transportation to

5    the jail.  ECF No. 38 at 4, ¶ 10.  Plaintiff does not claim that the delay of a few

6    minutes in medical treatment made his injury any worse.  Moreover, the officers

7    directly transported Plaintiff to the jail that had medical staff to assess his injuries,

8    which abated any risk of further harm or lack of treatment.  ECF No. 25 at 8, ¶ 21.

9    While Plaintiff disputes his general demeanor, Plaintiff caused the delay in

10   treatment at medical intake because staff found him "highly intoxicated …

11   uncooperative and belligerent."  ECF No. 25 at 9, ¶ 24.  As such, summary

12   judgment on Plaintiff's claim to adequate medical care is appropriate.

13       6.  *Right to a police report or internal affairs investigation*

14       Defendants argue that Plaintiff does not have a right to a police report or

15   internal affairs investigation.  ECF No. 24 at 12-13.  Plaintiff did not address this

16   claim on summary judgment.  ECF No. 42 at 2.

17       Plaintiff does not have a constitutional right to an accurate police report.  *See*

18   *Rich v. Palko*, 920 F.3d 288, 297-98 (5th Cir.), *cert. denied,* 140 S. Ct. 388

19   (2019), *reh'g denied sub nom. Rich for Dupuis-Mays v. Palko*, 140 S. Ct. 659

20   (2019); *Jarrett v. Twp. Of Bensalem*, 312 F. App'x 505, 507 (3d Cir. 2009)

(collecting cases).  Additionally, Plaintiff does not have a standalone constitutional right to an internal affairs investigation.  *See Estate of Sanchez v. Cty. of Stanislaus*, No. 1:18-CV-00977-DAD-BAM, 2020 WL 2937456, at *2 (E.D. Cal. June 3, 2020) (internal citation omitted); *Matta v. Gov't of Virgin Islands*, No. CV 2011-091, 2014 WL 4243673, at *7 (D.V.I. Aug. 27, 2014) (collecting cases); *Morrow v. City of Oakland*, No. C 11-02351 LB, 2012 WL 368682, at *14 (N.D. Cal. Feb. 3, 2012), *aff'd,* 690 F. App'x 517 (9th Cir. 2017).

It is undisputed that two of the officers created a police report regarding Plaintiff's arrest.  ECF No. 25 at 6 ¶ 17.  Contrary to Plaintiff's complaints that his injury was not reported, the police reports included his claimed injury and supervising officers were present at the time of arrest.  *Id.*  Even if the report did not include his injury, Plaintiff has not set forth any argument that his constitutional rights were violated in this context.  Thus, summary judgment on Plaintiff's claim for an accurate police report or internal affairs investigation is appropriate.

### 7.  *Qualified Immunity*

Defendants argue that they are entitled to qualified immunity for pulling Plaintiff into the police vehicle.  ECF No. 24 at 15-18.  Plaintiff counters by citing an Eighth Circuit decision that found similar behavior violated clearly established law.  ECF No. 37 at 14.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 16

1    Qualified immunity shields government actors from civil damages unless

2    their conduct violates "clearly established statutory or constitutional rights of

3    which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S.

4    223, 231 (2009). Generally, the defendant has the burden of pleading and proving

5    this affirmative defense. *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017).

6    *But see LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000) ("[P]laintiff bears

7    the burden of showing that the rights allegedly violated were 'clearly

8    established.'"); *Wesbrock v. Ledford*, No CV-19-02196-PHX-DWL, 2020 WL

9    2934929, at *8 (D. Ariz. June 3, 2020) ("Ninth Circuit law is not a model of clarity

10    concerning which party has the burden of proof when the defense of qualified

11    immunity has been raised.").

12    In evaluating a state actor's assertion of qualified immunity, the Court must

13    determine: (1) whether the facts, viewed in the light most favorable to the plaintiff,

14    show that the defendant's conduct violated a constitutional right; and (2) whether

15    the right was clearly established at the time of the alleged violation such that a

16    reasonable person in the defendant's position would have understood that his

17    actions violated that right. *See Saucier v. Katz,* 533 U.S. 194, 201-02 (2001)

18    (*overruled in part by Pearson,* 555 U.S. at 227) (holding that courts may exercise

19    sound discretion in deciding which of the two prongs should be addressed first). If

20    the answer to either inquiry is "no," then the defendant is entitled to qualified

immunity and may not be held personally liable. *Glenn v. Washington Cty.*, 673 F.3d 864, 870 (9th Cir. 2011) (citing *Pearson*, 555 U.S. at 236).

The second prong of the *Saucier* analysis must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how … excessive force, will apply to the factual situation the officer confronts." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Thus, "police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id.* at 1153; *see Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (Plaintiff "must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful."). Such precedent "must be 'controlling' – from the Ninth Circuit or Supreme Court – or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp*, 871 F.3d at 911 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Here, viewed in the light most favorable to Plaintiff for purposes of summary judgment, Plaintiff has alleged a constitutional violation for excessive force. *See supra* at 11-12. However, this does not end the inquiry. The next issue is whether existing precedent existed to notify the officer that his *particular*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 18

*conduct* was unlawful.  Taken in light most favorable to Plaintiff, the Court finds that there is a sufficient consensus of case law governing the officer's conduct to put him on notice that his alleged actions were unconstitutional.  *See e.g.*, *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016); *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014); *McColman v. St. Clair Cty.*, 479 F. App'x 1, 7 (6th Cir. 2012).  Therefore, Officer Christensen is not entitled to qualified immunity as to Plaintiff's excessive force claim.

### 8.  *Section 1983 Municipal Liability*

Defendants argue that Plaintiff fails to plead a claim against the City of Spokane where they do not point to any policy or pattern that allowed the alleged excessive force in this case.  ECF No. 24 at 18-19.  Plaintiff counters that it is the absence of training on handling handcuffed detainees that precisely leads to the constitutional violations.  ECF No. 37 at 15-16.

"In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct."  *Shearer v. Tacoma Sch. Dist. No. 10*, 942 F. Supp. 2d 1120, 1135 (W.D. Wash. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).  A municipality can also be liable under "a policy of inaction or omission [which]

may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

Under a theory of failure to preserve constitutional rights, a plaintiff must show "in addition to a constitutional violation, 'that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  A plaintiff who asserts this theory faces "heightened requirements" because otherwise "when a municipal employee commits a constitutional tort, it could always be alleged that the municipality failed to enact a policy that would have prevented the tort." *Id.* at 1143-44.

Plaintiff merely identifies a lack of SPD policy regarding the handling of handcuffed detainees.  ECF No. 37 at 16.  However, Plaintiff fails to show that this lack of policy was the result of the City of Spokane's deliberate choice or knowledge that such lack of policy would result in a constitutional violation.  As such, summary judgment on Plaintiff's § 1983 claim against the City of Spokane is appropriate.

**C.  Plaintiff's State Law Claims**

Defendants argue that Plaintiff's state law claims for battery and gross negligence must fail for the same reasons the federal claims do: qualified immunity

based on lack of excessive force.  ECF No. 24 at 20-21.  Plaintiff counters that the officers are not entitled to qualified immunity, the City of Spokane is liable under the doctrine of *respondeat superior*, and the officers were negligent in the handling of Plaintiff.  ECF No. 37 at 18-20.  Plaintiff did not plead negligence however, he pleaded battery and gross negligence (or willful and wanton misconduct) as his state law claims.  ECF No. 21 at 27-32.

Under Washington law, battery is defined as "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent." *McKinney v. City of Tukwila*, 103 Wash. App. 391, 408 (2000) (internal citation omitted).  Ordinary negligence requires Plaintiff to show "the existence of a duty …, breach of the duty, and injury to plaintiff proximately caused by the breach" whereas gross negligence requires that the defendant "*substantially* breached its duty by failing to act with even slight care."[2]  *Harper v. State*, 192 Wash. 2d 328, 340-41 (2018) (internal citations omitted).  Once the tortious conduct of an

---

[2]     The parties dispute whether Plaintiff must establish ordinary or gross negligence.  ECF No. 37 at 19.  For the purposes of this summary judgment, this issue is not dispositive as either claim can go forward.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 21

1   employee is determined, the local government entity may be held liable to the

2   same extent.  RCW 9A.16.020(1).

3        However, state law qualified immunity shields an officer from suits in tort

4   where the officer "(1) carries out a statutory duty, (2) according to procedures

5   dictated to him by statute and superiors, and (3) acts reasonably." *McKinney*, 103

6   Wash. App. at 407 (quoting *Staats v. Brown*, 139 Wash. 2d 757, 778 (2000); *see*

7   *also* RCW 9A.16.020(1) (providing that use of force is not unlawful "[w]henever

8   necessarily used by a public officer in the performance of a legal duty.").  Where

9   an officer's use of force is determined to be reasonable under the Fourth

10  Amendment, state law qualified immunity applies and the officer will not be liable

11  for state torts, nor will his employer.  *See Gallegos v. Freeman*, 172 Wash. App.

12  616, 641-42 (2013).

13       It is not disputed that the officers were carrying out a statutory duty.

14  However, issues of fact remain whether Officer Christensen acted reasonably, as

15  outlined in the excessive force claim.  *See supra* at 11-12.  Therefore, Defendants

16  Officer Christensen and City of Spokane are not entitled to state law qualified

17  immunity at this time.  Thus, summary judgment as to Plaintiff's state law claims

18  are not appropriate.

19

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 22

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 24) is **GRANTED in part** and **DENIED in part**.

2. Defendants David Dunkin, Jason Curtis, and Eric Kannberg are **DISMISSED** with prejudice. The Clerk shall terminate them from the docket.

3. The following claims are **DISMISSED** with prejudice: all Fourth Amendment claims, except the allegation that Officer Christensen grabbed the handcuffs that were secured to both of Plaintiff's wrists and dragged him into vehicle, thereby breaking Plaintiff's right clavicle; all Eighth Amendment claims; all Fourteenth Amendment right to adequate medical care claims; all claims regarding the failure to report injuries, write reports or conduct internal affairs investigation; all § 1983 municipal liability claims; and all state law tort claims, except those that relate to the one remaining Fourth Amendment claim.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** September 23, 2020.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 23